## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

                                                    **Case No. 4:01cr52-RH**
**vs.**                                             **Case No. 4:04cv354-RH/WCS**

**TAURUS DESHON BAKER,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION TO DENY MOTION TO VACATE

Defendant filed an amended motion to vacate sentence pursuant to 28 U.S.C. §

2255.  Doc. 154.  The Government filed a response in opposition.  Doc. 159.  Defendant

filed a reply.  Doc. 160.

**History of the Case**

Defendant was charged in six counts of a six count indictment.  Doc. 1; *See also*

PSR, ¶ ¶ 1-6 (summarizing the six counts).  Count one charged that between December

1, 1999, and August 8, 2001, Defendant and Joseph Bess conspired "together and with

other persons, to possess with intent to distribute more than fifty (50) grams of a

substance containing cocaine base," in violation of 21 U.S.C. § 846.  Doc. 1, p. 1.

Count two charged that on or about May 9, 2001, Defendant and Bess knowingly and intentionally distributed more than five grams of cocaine base in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii), and 18 U.S.C. § 2. *Id.*, p. 2.

Count three charged that on or about June 14, 2001, Defendant knowingly and intentionally distributed more than five grams of cocaine base in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii), and 18 U.S.C. § 2. *Id.*

Count four charged that on or about August 8, 2001, Defendant and Bess "did knowingly and intentionally possess with the intent to distribute cocaine and more than fifty (50) grams of cocaine base, commonly known as crack cocaine, controlled substances, in violation of Title 21, United States Code, Sections § 841(a) and (b)(1)(A)(iii) and (b)(1)(C) and Title 18, United States Code, Section 2." *Id.*, p. 3.

Count five charged that on or about August 8, 2001, Defendant and Bess knowingly possessed firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I) and (2). *Id.*, pp. 3-4.  The firearms specified in count five included a Smith and Wesson .357 caliber revolver, a Remington .22 caliber rifle, an A.A. Arms 9mm pistol, and a Remington 30-60 caliber rifle. *Id.*

Count Six charged that on or about August 8, 2001, Defendant knowingly possessed a firearm in and affecting commerce having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). *Id.*, pp. 4-5.  The indictment charged that on or about April 22, 1997, Defendant was convicted in the State of Florida for two counts of possession of cocaine. *Id.*, p. 4.  It specified that Defendant possessed a Smith and Wesson .357 caliber revolver, which had previously been transported in interstate commerce. *Id.*

The Federal Public Defender  was appointed on September 18, 2001, and Assistant Public Defender Bill Clark initially represented Defendant.  Docs. 17 and 18. According to Defendant, the Assistant Public Defender withdrew due to a conflict of interest.  Doc. 154, Ex. C.  Robert Senton, a Criminal Justice Act (CJA) panel attorney, was selected to represent Defendant and commenced representation on September 20, 2001.  Doc. 21.  Senton picked up initial discovery from the Government on October 1, 2001, and requested additional discovery the following day.  Doc. 25, p. 2.  As the discovery process was still ongoing, some material would not be available for an indeterminate amount of time, and some material could ultimately be disputed, counsel sought continuance of trial.  *Id.*, pp. 2-3.  The motion for continuance was denied following a telephone hearing held on October 15, 2001, and trial was to begin on October 30, 2001.  Doc. 28 (order entered on the docket on October 16, 2001).

Senton filed a motion to withdraw as counsel on October 22, 2001.  Doc. 29.  He indicated that on October 18, 2001, he was advised by Defendant that his family had retained other counsel for him, counsel confirmed that the family had retained Steven Whittington, and that on Saturday October 20, 2001, he met with Defendant and Whittington at the detention center and confirmed that this was what Defendant wanted. *Id.  See also* Doc. 154, Ex. C (Defendant's affidavit).  Whittington filed a notice of appearance.  Doc. 31.  Senton's motion to withdraw was granted.  Doc. 37 (minutes).

The Government filed a notice of enhancement based on prior convictions.  Doc. 36.

The trial lasted three days, including the closing arguments and instructions. Docs. 104-106 (transcripts from October 30, 31, and November 1, 2001).   Defendant

was found guilty on all counts.  Doc. 106, pp. 502-504; Doc. 50.  The jury also

specifically found the following beyond a reasonable doubt: count one involved fifty

grams or more of cocaine base; count two involved five grams or more of cocaine base;

count three involved five grams or more of cocaine base; and the substance involved in

count four was cocaine base, *and* the amount possessed with intent to distribute was

fifty grams or more.  *Id.*

Prior to sentencing, Defendant filed a pro se "Motion for evidential [sic] hearing

under Brady violation."[1]  Doc. 62.  He asserted that police reports were received on

October 29, 2001, the day before trial started, and that if provided earlier they, "would

have shown grounds for complete dismissal under doctrine of 'Fruits of the Poisness

[sic] Tree.'"  *Id.*  Defendant submitted a pro se letter to the court, asking for discovery

under Rule 16 and the *Jencks* act in order to prepare for appeal.  Doc. 75.

Defendant filed a pro se motion to dismiss his retained counsel dated December

23, 2001, asserting conflict of interest because counsel was not protecting Defendant to

the best of his ability.  Doc. 76.  Defendant sought appointment of new counsel for

sentencing and appeal.  Whittington filed a motion to withdraw.  Doc. 81.  He indicated

that he had filed objections to the PSR on December 21, 2001, after reviewing the PSR

with Defendant.

---

[1] Under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d
215 (1963), "suppression by the prosecution of evidence favorable to an accused upon
request violates due process where the evidence is material either to guilt or to
punishment, irrespective of the good faith or bad faith of the prosecution."  *Jencks*
material is a written or other verbatim statement or recording previously made by a
witness which relates to the same subject matter as the testimony, and is in the
possession of the United States.  18 U.S.C. § 3500(b) and (e).

A hearing was held at which motions to withdraw – filed by Whittington and filed by John Gray, counsel for Defendant Bess – were granted.  Docs. 84 (minutes) and 88 (written order).  Motions to continue sentencing were granted, and Dennis Boothe was appointed to represent Defendant Baker.  Doc. 88, pp. 1-2.  The pro se motions of both defendants for a hearing on alleged *Brady* violations were denied.  *Id.*, p. 2.  Defendants were subsequently directed not to submit any further pro se documents, with the exception of a motion to terminate counsel if counsel refused to file such a motion.  Doc. 94.

Boothe then filed a motion to withdraw due to a conflict of interest (he had formerly prosecuted Defendant on one of the cases the Government relied upon to seek an enhanced sentence), and the motion was granted.  Docs. 96 and 97.  Steven Seliger was appointed, and sentencing was continued.  Docs. 98, 100, 102.  Defendants Baker and Bess, represented by Seliger and Clyde Taylor, respectively, filed a renewed motion for new trial.  Doc. 108.  In support, Defendants alleged repeated instances of misconduct by the Government, including late discovery supplied the evening before trial, late disclosure of tape transcripts, and insufficient time to discuss and digest the late disclosures.  The Government filed an opposition.  Doc. 109.  The motion was addressed at the time of sentencing.  Doc. 128 (transcript), pp. 5-33.

The arguments raised with respect to the motion, and pertaining to sentencing, are addressed further *infra*, as relevant to Defendant's claims.  Defendant was sentenced to 292 months and 120 months, to run concurrently, and a consecutive term of 60 months.  *Id.*, pp. 92-93.  Bess received the same sentence.  *Id.*

On appeal, Defendants Baker and Bess challenged the denial of the motion to suppress evidence under <u>Franks v. Delaware</u>, 98 S.Ct. 2674 (1978), and the Eleventh Circuit found no error.  Doc. 145, pp. 3-8.[2]  Defendants challenged the denial of their motions for judgment of acquittal on the firearm charges under § 924(c)(1)(A)(I), and Defendant Baker challenged the denial of his motion for judgment of acquittal on his possession of firearm charge under § § 922(g)(1) and 942(a)(2).  The Eleventh Circuit found no error.  <i>Id.</i>, pp. 8-15.  Both Defendants challenged the calculation of drug quantity at sentencing under U.S.S.G. § 2D1.1(a), asserting that Charlton's testimony was not credible.  The Eleventh Circuit found no error.  <i>Id.</i>, pp. 15-18.

**Standard of Review**

Errors raised and disposed of on direct appeal cannot be considered on a § 2255 motion.  <u>United States v. Nyhuis</u>, 211 F.3d 1340 , 1343 (11th Cir. 2000) (citation omitted).  On the other hand, an available issue not previously raised and decided on appeal is considered procedurally barred, and will not be reviewed absent a showing of cause and prejudice.  <i>Id.</i>, at 1344 (citations and footnote omitted).

Further,

Because collateral review is not a substitute for a direct appeal, the
general rules have developed that: (1) a defendant must assert all
available claims on direct appeal, and (2) "[r]elief under 28 U.S.C. § 2255
'is reserved for transgressions of constitutional rights and for that narrow

---

[2] Under <u>Franks</u>, if an affidavit made "in support of a request for a search warrant contains a false statement that is made knowingly and intentionally, or with reckless disregard for the truth, and if, stripped of that false statement, the affidavit does not establish probable cause, the search warrant must be voided."  Doc. 145, p. 4 (citations omitted).  The alleged false statement here pertained to the address of the trailer from which the controlled buys were made.  <i>Id.</i>, pp. 5-7.  <i>See also</i> doc. 104, pp. 3-58 (transcript of <u>Franks</u> hearing, held immediately before trial).

compass of other injury that could not have been raised in direct appeal
and would, if condoned, result in a complete miscarriage of justice.'"
Accordingly, a non-constitutional error that may justify reversal on direct
appeal does not generally support a collateral attack on a final judgment,
unless the error (1) could not have been raised on direct appeal and (2)
would, if condoned, result in a complete miscarriage of justice.

Lynn v. United States, 365 F.3d 1225, 1232-32 (11th Cir.), *cert. denied*, __ U.S. __, 125
S.Ct. 167, 160 L.Ed.2d 154 (2004) (citations and footnotes omitted).

As set forth ahead, Defendant raises various substantive claims, *and* asserts that
the failure to previously raise those claims resulted from ineffective assistance of
counsel.  Claims so related are therefore reviewed here only in the context of claims of
ineffective assistance of counsel.  The substantive claims, standing alone, are
procedurally defaulted if they are cognizable under § 2255 at all, and "ineffective
assistance adequate to establish cause for the procedural default of some *other*
constitutional claim is *itself* an independent constitutional claim."  Edwards v. Carpenter,
529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (emphasis by the
Court); *see also* Massaro v. United States, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696,
155 L.Ed.2d 714 (2003) (ineffective assistance of counsel is cognizable under § 2255
whether or not it could have been raised on appeal).

"A convicted defendant making a claim of ineffective assistance of counsel must
identify the acts or omissions of counsel that are alleged not to have been the result of
reasonable professional judgment," and must also "affirmatively prove prejudice," *i.e.*, a
"a reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 690,
693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).   The court need not

approach the Strickland inquiry in any particular order, or address both prongs if an insufficient showing is made on one.  466 U.S. at 697, 104 S.Ct. at 2069.

**Ground One (motion p. 3, memo p. 4)**[3]

Defendant asserts ineffective assistance of counsel for failing to use (or even read) the lab reports of chemist Daniel Miller.  Defendant asserts that proper use of the reports would have shown that Miller was testifying regarding drugs not relevant to Defendant's case, as they were taken from a Government witness.  "Put differently, the drugs that [Defendant] allegedly sold were already a part of the crime lab, since the witness (Stafford Charleston[)] was arrested with the drugs in 2000.  While [Defendant] was not arrested until August 8, 2001."  Motion, p. 3, referencing Ex. A.

Exhibit A includes lab reports dated May 24, 2001, and June 7, 2001, both listing as the subject "Charlton, Stafford."  Ex. A, pp. 1 and 2, respectively.  Both reference items submitted for analysis on May 14, 2001.

There is also an FDLE form for submission of evidence, submitted by Barbara Kitt-Woods and received by Sandra Phelps on May 14, 2001.  *Id.*, p. 3.  That timing of this submission for laboratory analysis is consistent with the first controlled buy in this case, made on May 9, 2001.  However the form reflects the offense or seizure date as "12/13/2099," with the year corrected to 2000 and initialed SP.  *Id.*  Finally, there is an FDLE report bearing the names of these Defendants, Baker and Bess, referencing the offense date of August 8, 2001, and submitted on August 17, 2001.  *Id.*, p. 4.  It is signed by Daniel Miller.  The date is consistent with evidence obtained on the date of

---

[3] References to Defendant's arguments are to the amended § 2255 motion and supporting memorandum, filed as one document.  Doc. 154.

the arrest and search, made on August 8, 2001, and the dates of counts four, five, and six.

The Government responds that the amounts in the report matched the testimony, and evidence regarding Charlton probably went to the conspiracy charge.  Doc. 159, p. 12, citing Attachment B (affidavit of Whittington), ¶ 3.  "It also became clear in response to the defendant's motion for new trial that the laboratory report related to the defendant's case even though the label may have been confusing."  *Id.*, *citing* Doc. 128, pp. 24-26.

Miller's testimony appears in the transcript of the second day of trial.  Doc. 105, pp. 374-394.  Counsel for the Government noted at the beginning of his testimony that there had been a mix up with the exhibit numbers, and the court took a brief recess.  *Id.*, pp. 376-377.

As discussed with regard to the motion for new trial (heard prior to sentencing), there was an FDLE lab report with the wrong name (Stafford Charlton) and the wrong date (December 13, 2000).  Doc. 128, pp. 22-23.[4]  It was disclosed in the discovery provided months before trial.  *Id.*, pp. 23-24.  The court thought it was something the defense could have explored at trial.  *Id.*, p. 23.

The Government explained how the report ended up with Charlton's name on it and a date corresponding to his drug sale:

> [I]n FDLE's investigation, these were somehow carried under the same umbrella investigation, and when that drug exhibit was submitted to the

---

[4] To further confuse matters, the Government's response erroneously referenced the incorrect date on the report as December 13, 2002.  Doc. 109, p. 2; doc 128, pp. 22-23 (noting this had to be in error as "it's only May of 2002 now.").

lab, they simply – probably Ms. Kitt-Woods or somebody acting at her direction, pulled up that portion of the submission, and it got carried through from there.

But what actually happens is, when we get to trial, ignoring for the moment the lab report itself, the agent testified that this is the dope – the informant testified that I bought dope from Mr. Bess and Mr. Baker on thus and such a date. The agent testifies that he received the dope from the informant and submitted it to the lab. And the chemist testifies with the exhibit numbers being linked up that this was the exhibit, and I examined it, and here's what it is. And Mr. Corder is prepared to testify that, prior to trial, with the defense attorneys, they went through the glitch, and we said, "That's our problem, but this lab report goes with that deal."

*Id.*, p. 25.

The Government conceded that the transcripts of the tapes containing conversations with the confidential informants were late. *Id.*, p. 26.

The court denied the motion for new trial, finding that even if the motion had been timely filed, it would have been denied on the merits. *Id.*, p. 33. The court noted that the Government's evidence was overwhelming, and that the evidence of both Defendants' participation was clear and overwhelming. *Id.* The court found no support for a claim that there was any *Brady* material; "[n]othing about any of this is exculpatory or has been shown to be exculpatory." *Id.* The court found "[t]here's not been any showing that any discovery was untimely or that the Government failed in any of its obligations, either under Rule 16, under *Brady*, or under the *Jencks* Act. *Id.*, p. 34.

The court found that transcripts of taped conversations were late, but they were not particularly important, and the tapes were timely provided. *Id.* It was noted that the lawyers trying the case were both experienced and thorough, that as good officers of the court they would not have complained about the late turnover of transcripts, if they

were short, which had no impact on them, and the conclusion that the transcripts had no

impact was consistent with the handling by the lawyers.  *Id.*, p. 35.

In light of all of this, Defendant has not shown that counsel should have more

effectively cross examined Miller based on any mislabeling of the lab reports.[5]  The

Government had a reasonable explanation for the typographical errors.  Pressing the

point might only have highlighted the association between Charlton and Defendants

Baker and Bess.  Neither attorney error nor prejudice to the outcome has been shown.

**Ground Two (motion p. 3, memo p. 5)**

Defendant asserts that counsel was ineffective for failing to object to the

constructive amendment of the indictment, when the court substituted the word

"willfully" for the word "intentionally" as an element of possession with intent to

distribute.  Defendant also asserts a constructive amendment where "cocaine and

cocaine base" was charged in the indictment, and the court instructed the jury using the

term "cocaine or cocaine base."

The Government responds that "knowingly and willfully" was charged in the

conspiracy count, while "knowingly and intentionally" was used in counts two, three, and

four.  Doc. 159, p. 11.[6]  This is correct.  Doc. 1 (discussed *supra*).  Further, the court did

instruct using the terms knowingly and willfully as to counts two, three and four.  Doc.

---

[5] Whittington did elicit from Miller on cross that Miller had not conducted an
analysis for purity on any of the submitted substances.  Doc. 105, pp. 391-393.

[6] Defendant does not seem to assert amendment as to the conspiracy charge,
which was charged and instructed using the terms knowingly and willfully.  *See* doc. 1,
p. 1; doc. 48, p. 15 (instructing that "if a Defendant has a general understanding of the
unlawful purpose of the plan and knowingly and willfully joins in that plan on one
occasion, that is sufficient for conspiracy . . .").

48, pp. 16-17.  Defendant's argument is that the court's use of the term "knowingly and willfully" as to counts two, three and four, when the term "knowingly and intentionally" was used in the indictment, constituted constructive amendment of those counts.

In instructing the jury, the court did not read the indictment verbatim because a copy was supplied to the jury for use during deliberations.  Doc. 48, p. 12.  After instructing (as noted above) regarding counts two, three, and four, the court further instructed that: "[a]n act is done 'knowingly' if it is done voluntarily and intentionally and not because of mistake or accident.  An act is done 'willfully' if it is done voluntarily and purposefully, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law."  *Id.*, pp. 24-25.

A constructive amendment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment," and "is per se reversible error."  United States v. Narog, 372 F.3d 1243, 1247 (11th Cir. 2004) (citations omitted).  Defendant has not shown a constructive amendment here.  The jury had access to the indictment itself.  Moreover Defendant has not shown that "knowingly and willfully" altered the essential element of "knowingly and intentionally" to broaden possible bases for conviction.  *Compare* United States v. Cancelliere, 69 F.3d 1116, 1121 (11th Cir. 1995) (charge of "knowingly and willfully" changed to omit "willfully" was a constructive amendment):[7] and Narog, 372 F.3d at 1244 ("because the indictment charged

---

[7] In Cancelliere, two counts charged that defendant "knowingly and willfully" committed money laundering, and the Government was permitted to strike "willingly" – an element not required by the statute – from the counts after the close of evidence.  69 F.3d at 1120-21.  The original charge was read to the jury when trial began, and

specifically that each [defendant] participated in the scheme knowing or having reasonable cause to believe that [pseudoephedrine] would be used to manufacture methamphetamine," and in response to a jury query the court instructed "that the government need only prove that defendants knew or reasonably believed that the pseudoephedrine would be used to produce *any* controlled substance," this constructively amended the indictment).  In this case, willfully and intentionally mean essentially the same thing, particularly given the court's definition of the term willfully.

As to the second aspect of this claim, the only count which referred to cocaine *and* cocaine base, rather than only cocaine base, was count four, charging Defendants with possession with intent to distribute "cocaine and more than fifty (50) grams of a substance containing cocaine base . . . ."  Doc. 1, p. 3.  Defendant could have been convicted of two offenses, since the statute prohibits possession with intent to distribute both cocaine and cocaine base.  The jury was instructed that the Government had to prove (*inter alia*) that Defendant "possessed cocaine *or* cocaine base," and then was instructed that if it found a defendant guilty of count four, "you must then determine whether the Government has proved beyond a reasonable doubt that the Defendant possessed with intent to distribute cocaine base, rather than only cocaine."  Doc. 48, pp. 17, 19.  The jury specifically found that the substance was cocaine base.  Doc. 50.  There was no error.  "Quite simply, the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be

---

defendant's whole defense was based on his lack of willfulness.  *Id.*, at 1121-22.  The court found that this was more than elimination of mere surplusage, and that redaction constituted constructive amendment.  *Id.*

obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive."  United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000); United States v. Brown, 330 F.3d 1073, 1078 (8th Cir.), *cert. denied*, 540 U.S. 975 (2003) ("It is well established that an indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment or a material variance in the proof.").

Defendant has not demonstrated constructive amendment.  Therefore, has not shown error or prejudice under Strickland.

**Ground Three (motion, p. 4, memo p. 6)**

Defendant asserts that counsel was ineffective for failing to file a motion to suppress his confession.  He argues that it was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  Defendant asserts that the confession was the only evidence directly linking him to the drugs and guns seized on August 8, 2001.  Defendant claims that counsel made no investigation into the possible merits of a motion to suppress the confession.  The Government responds that reports of law enforcement reflect that Defendant was given Miranda warnings before he gave a statement.  Doc. 159, pp. 12-13, relying on counsel's affidavit.

Sergeant Jim Corder of the Gadsden County Sheriff's Department testified about his involvement in the investigation of Defendants Baker and Bess.  Doc. 105, p. 229-246.  He was there when the search warrant was executed.  *Id.*, p. 246.  He said that Bess, who was there when they arrived with the warrant, was immediately taken into custody and advised of his constitutional rights required by Miranda.  *Id.*, p. 248.  The

rights were read to him from a card, and Bess indicated he understood and waived his rights.  *Id.*, p. 249.

Shortly thereafter, two other deputies arrived with Defendant, who had been arrested at a nearby nightclub.  *Id.*, pp. 249-250.[8]  Corder then advised Defendant of his Miranda rights by reading them to Defendant from a from a card.  *Id.*, at pp. 249-250, 290, 296.  Defendant Baker said he understood his rights and would talk with them.  *Id.*, p. 250.  Baker was brought into the living room and sat down on the couch, and Corder read "each and every word of the search warrant" out loud to him.  *Id.*, p. 251.

Defendant was then taken out to the front porch, where he stayed during the search.  *Id.*, p. 290.  Corder said that about 45 minutes later, after most of the search was completed, he talked with Defendant out on the porch, along with Agents Kitt-Woods and Desmond, and Defendant gave a statement, admitting that the bedroom was his and the cocaine found in it was also his.  *Id.*, pp. 269, 289.

Corder said that a written waiver of Miranda rights was not presented to Defendant until he arrived at the county jail.  *Id.*, p. 290.  He said that Defendant refused to sign a written waiver of rights.  *Id.* and p. 292.

Corder also identified an exhibit reflecting that Defendant had refused to sign a permission to search form.  *Id.*, pp. 292-293.  Corder said the permission to search form was read to Defendant at the scene and but not presented to him until he arrived at the jail.  *Id.*, p. 293.  Corder said that Defendant gave permission to search at the scene of

---

[8] The plan was for the deputies to pick up Baker at the club and then the search warrant would be executed.  *Id.*, p. 295.  Corder said he contacted the deputies at the club when they were at the trailer, and they had Baker there ten minutes later.  *Id.*, pp. 295-296.

the search, but also said that Defendant refused to sign the form at the search scene, a statement inconsistent with the earlier statement that the form was not presented to Defendant until he arrived at the jail.  *Id.*

Corder repeated that Baker was advised of his rights when he arrived at the trailer, as soon as he got out of the squad car.  *Id.*, p. 296.  He said the rights were read to him at 9:50 p.m., as documented on the form.  *Id.*  He said the waiver was not always shown to an accused at the same time rights are read.  *Id.*, pp. 296-297.  Corder said Defendant gave permission to search at 10:00 p.m., as set forth on the form.  *Id.*, p. 297.  He said the times of 9:50 and 10:00 did not correspond to the times that Defendant refused to sign the acknowledgment or permission to search forms.  *Id.*

In summary, the record reflects that there was significant evidence that Defendant was advised of his <u>Miranda</u> rights before he gave a statement, not after. Defendant does not now allege any particulars beyond what is shown in the record, that he refused to sign a written waiver of his right to remain silent when he got to the jail. But by then he had already given his statement.  The refusal later to sign the written waiver form does not demonstrate a valid basis for suppressing the confession.  *See* <u>North Carolina v. Butler</u>, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) ("[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.  The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case."); <u>Edwards v. Arizona</u>, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (a valid waiver "depends in each case 'upon the particular

facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.")[9]; *quoting* <u>Johnson v. Zerbst</u>, 304 U.S. at 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461 (1938) (other citations omitted).  As Defendant has not even established a basis for exclusion of his confession, he is not entitled to relief based on ineffective assistance of counsel.  *See* <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382, 106 S.Ct. 2574, 2587-88, 91 L.Ed.2d 305 (1986) (in context of ineffectiveness claim based on counsel's failure to file motion to suppress evidence, a meritorious claim Fourth Amendment claim was necessary but not sufficient, standing alone, for relief under <u>Strickland</u>).

**Ground Four (motion p. 4, memo pp. 7-8)**

Defendant asserts ineffective assistance of counsel for failure to advise him to accept or bargain for a plea agreement.  Defendant alleges in his affidavit that he was initially represented by Robert Senton, who was actively pursuing a possible plea.  Doc. 154, Ex. B.  He asserts that Senton told him he faced a sentence of about 15 years if he entered a guilty plea.  *Id.*  But the negotiations stopped when Steven Whittington became his attorney.  *Id.*

Defendant alleges that Whittington actually encouraged him to reject any offer, "as he could beat the government at trial."  Memo, p. 7.  By affidavit, Defendant states that Whittington told him if he entered a plea he would get a life sentence, so it would be

---

[9] In <u>Edwards</u>, the Court required additional safeguards once an accused invokes the right to counsel, holding that interrogation must stop until either counsel has been made available, or the accused himself initiates further communication or conversations with authorities.  451 U.S. at 484-485, 101 S.Ct. at 1884-85 (footnote omitted).  There is no indication that Defendant here invoked his right to counsel.

"better that I go to trial because he felt he could beat some of the counts.  If not, then

help the government after I lost my trial."  Doc. 154, Ex. B.  Whittington allegedly came

to see Defendant a few days after trial, and Defendant asked him to bring an agent back

to talk to him but counsel did not.  *Id.*  Defendant said he then asked the court to take

Whittington off this case.  *Id.*

The Government responds that Defendant wanted a guaranteed sentence prior

to cooperating, and counsel properly advised that he could not be guaranteed a certain

sentence or a substantial assistance motion.  Doc. 159, p. 13 (referencing counsel's

affidavit).  The Government argues that because Defendant would not cooperate

without a guarantee, counsel had no choice but to take the case to trial.  *Id.*  In reply,

Defendant "states under the penalties of [perjury], that he would have pled guilty to the

15 year sentence that prior counsel was negotiating."  Doc. 160, p. 7.  Defendant quotes

the Government's statement that "[a]s this court well knows, the government does plea

bargain for a specific sentence."  *Id.*, *quoting* doc. 159, p. 13.

Defendant's quotation is accurate, but the statement is clearly a typographical

error.  The court takes judicial notice that the United States Attorney in this district does

*not* offer or recommend a particular sentence for any defendant in a felony case, nor

does the United States Attorney guarantee to file a substantial assistance motion.

Indeed, many defendants who enter into plea and cooperation agreements later

contend that the Government did not file a promised substantial assistance motion.  But,

where cooperation is contemplated, those agreements always leave the filing of a

motion to the sole discretion of the Government.  Defendant was facing a statutory

minimum sentence of 20 years on two of the counts.  PSR, ¶ 82.  Government counsel

in this district would not have promised Defendant a sentence of 15 years, and especially would not have made any such promise in advance of cooperation.  Even with a substantial assistance motion, the sentencing decision in this district is made entirely by the court, and plea and cooperation agreements routinely so acknowledge. Defendant is not entitled to relief on this claim.

## Ground Five (motion p. 7, memo p. 8)

Defendant asserts ineffective assistance of counsel for failure to seek a continuance of trial to review *Brady* and *Jencks* material, not received until the night before trial.  Defendant asserts that if counsel had reviewed this material, he would have argued that the search warrant was invalid due to inconsistencies in the officers' reports, and could have impeached witnesses with the prior inconsistent statements. The Government responds that the court found no late disclosure of *Jencks* material and no *Brady* material.  Doc. 159, p. 13.  As set forth above, a hearing was held on this and no violations of *Jencks* or *Brady* were found.  Defendant has not shown that a continuance would have been of any benefit to the defense, and has not shown error of counsel or prejudice.

## Ground Six (motion p. 8, memo pp. 8-9)

Defendant asserts that counsel was ineffective for failing to object to constructive amendment to the indictment, as count one charged a conspiracy between Defendant and Bess to possess with intent to distribute cocaine base, and the evidence showed a conspiracy involving Defendant, Bess, and Charlton Stafford to manufacture, possess and distribute cocaine base.  He asserts that there are many references in the testimony that he manufactured cocaine base, a different offense than that charged.

The indictment charged that Defendants Baker and Bess did "combine, conspire, confederate, agree, and have a tacit understanding *together and with other persons*, to possess with intent to distribute more than fifty (50) grams of a substance containing cocaine base . . . ."  Doc. 1, p. 1 (emphasis added).  Stafford was one "other person[]" with whom they conspired.  That there was evidence that Stafford was an unnamed coconspirator does not constitute a constructive amendment.  *Compare* United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990), *cert. denied*, 499 U.S. 978 (1991) ("where the indictment specifically alleges that only two individuals conspired, *and contains no language indicating that there were unnamed or unknown conspirators*, we believe that an essential element of the offense is the identity of the individuals who agreed.").  In Keller, there was a constructive amendment where the indictment charged a conspiracy between Keller and Smith only, yet "[t]he court's instructions had the effect of adding the phrase 'with other named and unnamed conspirators,'" allowing the jury to convict on a finding of conspiracy with *anyone* and thus broadening the possible bases for conviction.  *Id.*, at 636.

The jury was instructed that "[t]o 'possess with intent to distribute' cocaine base means to possess cocaine base with intent to deliver or transfer possession of the substance to another person, with or without a financial interest in the transaction."  Doc. 48, p. 14.  The testimony about cooking the cocaine into crack cocaine, as well as the desire to do that in order to reap more of a profit, tended to prove that the substance involved in the conspiracy was indeed cocaine base and that there was intent to distribute it.  This was evidence that proved the offense charged.  It was not a

constructive amendment of the indictment to allege a new offense.  Ineffective

assistance of counsel has not been shown.

**Ground Seven (motion pp. 8-9, memo pp. 9-10)**

Defendant asserts that counsel was ineffective for failing to impeach Lopez

Daniel with his prior inconsistent statement.  Defendant asserts that the comparison of

the police reports with Daniel's testimony (submitted as Exs. C and D to the § 2255

motion) shows a conflict in statements and that he changed his story to suit the

Government's theory.  Defendant contends that the Government allowed false

testimony to go uncorrected, and counsel's failure to impeach this witness with his prior

statements allowed Defendant to be convicted based on perjury.

Hernandez Lopez Daniels testified about cooperating with officials for the

controlled buy on May 9, 2001.  Doc. 104, pp. 72-79.  He was the "cooperating source"

(CS) in the investigation report prepared by Erin Desmond.  Doc. 154, Ex. C.  According

to the report, Daniels was searched, given $500 and equipped with a transmitter, and

then monitored by officers in his contact at the trailer.  Ex. C, p. 1.  The report reflects

that Daniels arrived at 9:47 p.m. and entered the trailer.  *Id.*  According to the report

Daniels gave the $500 to Defendant, who retrieved one crack cookie from under the

couch, handed it to Bess, and Bess gave it to Daniels.  *Id.*  Daniels left the location at

9:51 p.m. and gave this evidence to Corder.

In his testimony, Daniels said officers gave him $1000 (rather than $500), and

that he stood at the door of the trailer (rather than entering).  Doc. 104, pp. 73-75

(copies also supplied as Ex. D to doc. 154).  He testified that he talked to Bess at the

door and did not see Defendant before he handed him the money; he said there were

guys in the house playing a video game but he did not pay attention to who was there or if Defendant was playing. *Id.*, pp. 75-76. He did not testify that he saw Defendant reach under the couch or hand the cocaine to Bess. Daniels testified that he had no doubt that is was Bess who brought him the cocaine and Defendant who took the money. *Id.*, pp. 79, 76. Daniels testified that officers gave him $1000 but he only spent $500, as Bess "only brought me one circle and I ain't push it about getting the other one." *Id.*, pp. 76-77. He gave Corder the other $500 back. *Id.*, p. 78.

The minor inconsistencies between what the officer reported that Daniels had said and the testimony of Daniels at trial do not significantly discredit Daniels's testimony. The inconsistency as to the amount of money given to Daniels is trivial. While the trial testimony, that Daniels did not see Defendant until he returned to the door, is inconsistent with the police report, that Daniels saw Defendant reach under a couch to retrieve the cocaine, a reasonable trial attorney would not have wanted to point out that inconsistency since the statement in the police report was more damaging than the trial testimony. It showed that Defendant had full control of the crack cocaine in the residence. Defendant is not entitled to relief on this claim.

**Grounds Eight and Nine (motion pp. 10-11, memo pp. 10-11)**

Defendant asserts that count five of the indictment was duplicitous (ground eight), and that counsel was ineffective for failing to make this objection (ground nine). Defendant asserts that two separate violations of § 924(c) were charged, that he had no notice of which drug crime was connected with which firearm, and (because it was unclear) the verdict of the jury was not unanimous. Defendant asserts that there was no evidence at trial to support two drug charges and two possession of firearm charges.

The Government responds that Defendant's argument in ground eight "is difficult, if not impossible, to follow," makes no sense, and is meritless.  Doc. 159, p. 6.

Count five charged that *on or about August 8, 2001*, in furtherance of the drug trafficking charges set forth in counts one *and* four, Defendants knowingly possessed firearms: a Smith and Wesson .357 revolver, a Remington .22 rifle, an A.A. Arms 9 mm. pistol, and a Remington 30-06 rifle. Doc. 1, pp. 3-4. [10]  Count one was the conspiracy occurring on or about December 1, 1999, through August 8, 2001, and count four was the substantive count of possession with intent to distribute cocaine base on or about August 8, 2001.

As to count five, the jury was instructed that the Government must prove beyond a reasonable doubt that the defendant committed the offense charged in count one ***or*** count four, that in furtherance of that offense the defendant possessed a firearm as charged, and that the defendant possessed the firearm knowingly.  Doc. 48, pp. 20-21. Defendant was found guilty of both counts one and four, thus encompassing the period from the beginning of the conspiracy to the date of arrest on August 8, 2001.

Defendant seems to be arguing that since count five named a number of firearms and referenced two different counts (one and four) alleged to have occurred on two different dates, there was no way for there to be a unanimous verdict on count five.  He claims that due to this duplicity, "he was not properly given notice, nor did the jury return

_____

[10] There were two counts involving firearms, counts five and six.  Count six charged that on August 8, 2001, Defendant knowingly possessed a Smith and Wesson .357 revolver which had previously been transported in interstate commerce.  Doc. 1, pp. 4-5.  His argument does not seem to go to this count, and a duplicity argument is not implicated on this count.

[a] unanimous verdict as to possessing a firearm *on December 1, 1999* and August 8, 2001."  Doc. 154, p. 11 (emphasis added).

"A duplicitous indictment charges two or more separate and distinct crimes in a single count."  United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989) (citation omitted); United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997), *cert. denied*, 523 U.S. 1077 (1998) (citing Burton).  Where a statute prescribes alternative ways for violation, each subject to the same punishment,

> the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute.  The conjunctive allegations do not render the indictment duplicitous.

871 F.2d at 1573 (citations omitted).

It was specifically alleged in count five that the firearm was possessed on or about August 8, 2001, the date the firearms were discovered on execution of the search warrant.  The conspiracy was alleged to have run until August 8, 2001, which was the last day alleged for the conspiracy.  The jury was not permitted to convict on count five for possession of the firearms on December 1, 1999, at the beginning of the conspiracy. It could only convict for possession on August 8, 2001.  The fact that the indictment referenced the drug trafficking offenses in counts one and four, and that the jury was instructed that the possession of the firearm had to be in furtherance of the drug trafficking offense in counts one or four, did not make it duplicitous.[11]

---

[11] It is noted that Defendant could not have received two convictions for his two predicate offenses under § 924(c)(1) based on a single possession of a single firearm. United States v. Phipps, 319 F.3d 177, 184-185 (5th Cir. 2003).  *See also* United States v. Privette, 947 F.2d 1259, 1262-63 (5th Cir. 1991) (multiple firearms during a single

Further, if counsel had made an objection, then the jury could have resolved the issue by special verdict.  Given its finding of guilt on both predicate counts and the number of firearms, Defendant has not shown a reasonable possibiltiy of a different result had counsel made this objection.  Ineffectiveness is not shown.

**Ground Ten (motion, p. 11, memo pp. 11-12)**

Defendant asserts that the court denied due process by denying a buyer-seller jury instruction, when there was evidence to support this theory of defense.  Defendant does not assert this in the context of ineffective assistance of counsel, and this claim is procedurally defaulted because not raised on appeal.

Moreover, ineffectiveness is not shown because counsel requested an instruction on the buyer-seller relationship theory of defense.  Doc. 44; doc. 105, p. 486.  The court asked who was the buyer and who the seller if there was no conspiracy, and counsel answered that Defendant was only a seller to the confidential informants.  Doc. 105, p. 486.  The court noted that the jury would be instructed that Defendant could not conspire with the informants, and did not think the facts justified the separate buyer-seller instruction.  *Id.*, pp. 486-487.  Stafford Charlton testified that he began his cocaine dealings with Defendant beginning in 1999, that he was the supplier to Defendant, and that he regularly supplied Defendant with cocaine and crack cocaine for several years.  Doc. 106, pp. 402-424.  Even aside from any default (or potential response to this

---

drug trafficking offense did not support multiple counts under § 924(c); while conspiracy and possession with intent to distribute would each support a separate § 924(c) conviction if there were more than one firearm, in such a case each firearm count must be tied to the specific offense to avoid double punishment for the same crime).

recommendation that it was appellate counsel who was ineffective), Defendant has not explained why this ruling was incorrect.

**Grounds Eleven and Twelve (motion pp. 11-12, memo pp. 12-13)**

Defendant asserts a denial of his right to have the jury decide every element of the offense.  He contends that the court exceeded its jurisdiction in finding him responsible for 1.5 kilograms of cocaine base at sentencing, an amount not found by the jury (ground eleven).[12]  He also asserts a violation of due process when his sentence was enhanced twice for offenses for which he was already found guilty,[13] and when his sentenced was enhanced based upon drug amounts not charged in the indictment or proved to the jury (ground twelve).  Defendant cites Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In Apprendi, the Court "confirm[ed] the opinion that we expressed in *Jones.* Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.  *See also* Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (applying

---

[12] At sentencing, the quantify of cocaine base was found to be 1.5 kilograms or more.  PSR, ¶ ¶ 19 and 29.

[13] In support of ground twelve, Defendant cites the PSR at ¶ ¶ 36 and 37 (motion p. 13, and memo p. 13).  Those paragraphs assessed two points each based on the quantity of firearms involved and the fact that one firearm had been stolen.  These facts did not enhance the sentence based on the same charges of conviction; neither the fact of multiple firearms nor the fact of a stolen firearm were necessary elements of possession of a firearm either in furtherance of drug trafficking or by a convicted felon.

Apprendi to a sentence enhanced under state sentencing guidelines, explaining the

term "statutory maximum"); United States v. Booker, 543 U.S. __, 125 S.Ct. 738, 160

L.Ed.2d 621 (2005) (applying Blakely to the Federal Sentencing Guidelines).

The Government responds that counsel said at sentencing that the verdict

complied with Apprendi, the claim was not raised on appeal, and Booker and Blakely do

not apply retroactively on collateral review.  Doc. 159, p. 7[14]; Varela v. United States,

400 F.3d 864, 867 (11th Cir. 2005).  Defendant replies that Apprendi was available at

the time of his trial, sentencing, and appeal, and that Booker and Blakely, as mere

extensions of Apprendi, do apply on collateral review.  Doc. 160, p. 3.

Under Varela, which is binding on this court, Booker and Blakely do not apply

retroactively on collateral review.  While Defendant asserts these are only extensions of

Apprendi, prior to these cases a challenge to the guidelines (within the minimum

prescribed by the statute) would have been rejected in this circuit.  In Varela, for

example, the court had found no entitlement to relief under Apprendi because the

---

[14] The Government cites the sentencing transcript, doc. 128, at p. 40.  Doc. 159,
p. 7.  The court assumed (correctly) that there was a verdict on amount, and the
following exchange took place:

Mr. Seliger:   Well, it was more than 50 grams.  That's it.  I
               mean, you've got --

The Court:     Okay.  Of course.  Okay.

Mr. Seliger:   Because, for *Apprendi* purposes, increases the
               statutory maximum.

The Court:     I understand. . . . So, I don't have a jury finding
               that affects the issue we're here on. . . . Okay.

Doc. 128, p. 40.

guidelines sentence did not exceed the maximum set out in 21 U.S.C. § 841.  400 F.3d

at 866.  *See also* United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir. 2001), *cert.*

*denied,* 535 U.S. 942 (2002) (Apprendi does not apply to the guidelines, which

determine sentence within the statutory range); United States v. Reese, 382 F.3d 1308,

1312 and n. 2 (11th Cir. 2004), *vacated*, __ U.S. __, 125 S.Ct. 1089, 160 L.Ed.2d 1058

(2005) (even after Blakely, "district courts should continue to sentence pursuant to the

Guidelines until such time as the Supreme Court rules on this issue," noting in the

footnote that oral argument had been scheduled in Booker).  Defendant is not entitled to

retroactive application of Booker and Blakely.

Defendant also asserts that had counsel raised this claim in this court and on

appeal, the outcome would have been different, and that if counsel did not raise this

specific claim he was ineffective.  Doc. 160, p. 4.  Given the law of this and every other

circuit at the time, counsel was not ineffective for failing to raise the argument ultimately

successful in Blakely and Booker.  United States v. Duncan, 400 F.3d 1297, 1308 (11th

Cir. 2005) (noting that before Blakely, "every federal court of appeals had held that

*Apprendi* did not apply to guideline calculations made within the statutory maximum.")

(citations omitted).  *See also* Black v. United States, 373 F.3d 1140, 1142-45 (11th Cir.

2004), *cert. denied*, 125 S.Ct. 942 (2005) (counsel not ineffective for failing to point out

language in two Supreme Court cases, when reasonable counsel could have concluded

the language was *dicta* and contrary to circuit precedent) (collecting cases).

**Ground Thirteen (motion p. 12, memo pp. 13-14)**

Defendant asserts that counsel was ineffective for failing to object to sentencing

on the basis of crack cocaine where the indictment charged cocaine and cocaine base

but the jury was instructed in the disjunctive.  As previously noted, the only count

charging cocaine and cocaine base in the disjunctive was count four, and the jury

specifically found that substance to be cocaine base.  Doc. 50, p. 4.  This claim is

without merit.

**Ground Fourteen (motion, pp. 12-13, memo pp. 14-15)**

Defendant asserts that there was a constructive amendment to the indictment as

to count five, as he was charged with possession of a firearm "in furtherance of a drug

trafficking crime," but the jury was instructed using "during and relation to" language

with no objection from counsel.  Defendant asserts that this allowed him to be convicted

on a lesser standard of proof, and he may have been convicted of an offense not

charged in the indictment.  Defendant also asserts that the dispositive issue is whether

counsel was ineffective, so the court reviews this as an ineffective assistance of counsel

claim.

The Government responds that the claim was waived and is meritless.  Doc. 159,

p. 8.  It is argued that the court did not constructively amend the indictment and the

instruction did not alter the burden of proof.  *Id.*

The jury was instructed that "Count Five charges the Defendants with knowingly

possessing firearms in furtherance of a drug trafficking offense,"[15] and that one of the

elements to be proven beyond a reasonable doubt was "[t]hat in furtherance of that drug

---

[15] Even in the initial brief summary of the counts, the court said that "Count Five
charges both Defendants with possessing certain firearms on August 8, 2001, in
furtherance of the drug trafficking crimes charged in Counts One and Four."  Doc. 48, p.
13.

trafficking offense the Defendant possessed a firearm, as charged."  Doc. 48, pp. 20-21.

The court also instructed that:

> A firearm is possessed "in furtherance of" a drug trafficking crime if and
> only if there is a connection between the Defendant, the firearm and the
> drug trafficking crime, so that the firearm facilitated the crime by serving
> some important function or purpose of the criminal activity.

*Id.*, p. 21.  The verdict form also used the "in furtherance of" language as to count five.

Doc. 50.  Defendant's claim of error based on an instruction using the language "during

and in relation to" is completely unsupported.

## Ground Fifteen (motion p. 13, memo pp. 15-16)

Defendant asserts ineffective assistance of counsel on appeal, for failing to raise

the arguments raised in the § 2255 motion.  Defendant asserts that he was represented

by a different attorney on appeal than at trial, and if appellate counsel had only reviewed

the transcripts he would have seen the conviction was unconstitutional.  In addition to

generally referencing the § 2255 grounds, Defendant claims that appellate counsel

should have raised insufficiency of evidence, erroneous jury instructions, and

sentencing issues.  Defendant has not demonstrated ineffective assistance of counsel

at any level of the proceedings, as discussed above, and this claim does not entitle him

to relief.

## Ground Sixteen (motion p. 14, memo pp. 17-19)

Defendant contends that he could not be guilty of conspiring with Bess, because

Bess was mentally incapable of entering into an agreement.  Defendant asserts that

Bess was addicted to crack cocaine, noting the Government referred to Bess as a

"crack head," and existed in a drug induced state.  By way of analogy, Defendant notes

that a person with a certain blood alcohol level is deemed legally incompetent to operate a motor vehicle.  Defendant claims that the Government should have informed the court and the jury that Bess was addicted to crack at the time of the alleged conspiracy, and accuses the Government of committing fraud on the court because a conspiracy can only exist with another person who is legally competent.

The Government responds that there is no evidence to show that use of cocaine rendered Bess incompetent or unable to conspire to possess with intent to distribute it. Doc. 159, p. 8.  Moreover, it is argued that Defendant was charged with conspiring with Bess and others, and Defendant had the requisite state of mind to enter into a conspiracy.  *Id.*, pp. 8-9.[16]

This argument is unsupported by the record or any specific allegation of facts. There is a significant difference from physical impairment for driving a motor vehicle safely and mental impairment sufficient to provide a defense to Bess for his role in the conspiracy.  Assuming that Bess's mental inability to form the requisite intent for conspiracy could have been raised in defense of the conspiracy charge against Defendant Baker, there is no showing that Bess did not knowingly enter into the conspiracy.  He was convicted by the jury of conspiracy.  Doc. 51.  The trial testimony was consistent with Bess conspiring to possess with the intent to distribute cocaine base.  *See, e.g.*, Doc. 104, pp. 69, 71, 75 (testimony of informant that when he went to

---

[16] Immediately following Defendant's argument on this, the final ground for relief, is a section titled "Cause and Prejudice," asserting ineffective assistance of counsel as cause for any default.  § 2255 memo, p. 19.  Defendant does not specifically assert ineffectiveness as to this claim, and the Government does not assert procedural default in response to this claim, so the court addresses it on the merits.

buy crack, Bess would go get it from the house and bring it out); 113-116, 131
(testimony of "Buddy" Owens, Bess was his wife's uncle, that Baker and Bess were
renting his trailer, Bess would sometimes give him the rent money, Bess worked on cars
in the yard); 171-190 (testimony of deputy who searched Bess's room that it contained
clothes and electronics, as well as scales, drugs, and a number of loaded firearms –
including one under his pillow); Doc. 105, pp. 411, 413-415, 418-419 (testimony of
Charlton, Bess would be at the trailer when he came to deal with Baker, Bess would
stay out of the room while they conducted business, he trusted Bess to keep people out,
that if someone happened to come to the trailer during that time to make a purchase,
then Bess would knock on the door, get the drugs from Baker, and then bring money
back; also said that Bess worked on his car); pp. 248-249 (testimony that at the time of
arrest Bess was read his rights, he said he understood and waived his rights).

There is no showing whatsoever that Bess was legally insane, mentally
incompetent, or unable to form the requisite intent for the conspiracy charge.  *See*,
United States v. Cameron, 907 F.2d 1051, 1063-67 (11th Cir. 1990) (discussing and
distinguishing the affirmative defense of insanity under the Insanity Defense Reform
Act, 18 U.S.C. § 17, and evidence which goes to the Government's burden to prove
specific intent; as to the latter there was no abuse of discretion in excluding evidence
that defendant had twice been diagnosed as schizophrenic, and was receiving some
sort of counseling at time of the offense, as there was no showing how this evidence
would negate intent to distribute crack cocaine); United States v. Westcott, 83 F.3d
1354, 1358 (11th Cir.), *cert. denied*, 519 U.S. 908 (1996) ("Evidence that a defendant
lacks the capacity to form *mens rea* is to be distinguished from evidence that the

defendant actually lacked *mens rea*," and "only the latter is admissible to negate the *mens rea* element of an offense.") (*citing* United States v. Pohlot, 827 F.2d 889, 905 (3d Cir. 1987)); United States v. Brown, 326 F.3d 1143, 1147-48 (10th Cir. 2003) (psychiatric evidence of mental capacity, based on post traumatic stress disorder combined with chemical dependency, properly excluded because there was no showing that it related to or tended to negate intent for conspiracy to possess with intent to distribute methamphetamine) (relying on Cameron, other citations omitted).   *See also* United States v. Knott, 894 F.2d 1119, 1121-23 (9th Cir. 1990) (under 18 U.S.C. § 17, mental disease or defect must be beyond the defendant's control, "[i]nsanity that is in any part due to a defendant's voluntary intoxication is not beyond his control," rejecting argument that combination of schizophrenia with voluntary intoxication entitled defendant to raise the defense); United States v. Garcia, 94 F.3d 57, 61-62 (2d Cir. 1996) (illogical and contrary to Congressional intent to allow a defense based on the combination of a mental disease, which was itself insufficient under § 17, with impermissible consideration of voluntary substance abuse) (discussing Knott).

**Recommendation**

It is therefore respectfully **RECOMMENDED** that Defendant's amended § 2255 motion, doc. 88, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on October 17, 2005.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**